40 C.C.P.A. (Patents)

## HANCOCK v. AMERICAN STEEL & WIRE CO. OF NEW JERSEY.

### Patent Appeals No. 5947.

United States Court of Customs and Patent Appeals.

April 15, 1953.

738

Hugh P. Carter and Jennings & Carter, Birmingham, Ala., for appellant.

Donald G. Dalton, Pittsburgh, Pa. (Matthew P. McDermitt, Pittsburgh, Pa., of counsel), for appellee.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Judges.

JOHNSON, Judge.

This is an appeal from the decision of the Commissioner of Patents, speaking through the Assistant Commissioner, 91

U.S.P.Q. 350, affirming the decision of the Examiner of Trade-Mark Interferences sustaining appellee's opposition to registration of the mark sought by appellant.

On May 5, 1948, appellant, Paul P. Hancock, filed his application, serial No. 556,-262, in the Patent Office for registration, under the Trade-Mark Act of 1946, 15 U.S. C.A. § 1051 et seq., of the mark "Tornado" in association with a pictorial representation of a whirlwind for use upon "wire fencing." Continuous use of the mark since April 9, 1948, was alleged in the application.

August 5, 1949, appellee filed notice of opposition to the registration so sought, alleging prior use of the trade-mark "Cyclone" as applied to "wire fencing, fence posts and gates, etc." Opposer alleged in its notice ownership of Registration No. 212,792 for the mark "Cyclone" as applied to "wire fencing, etc.," issued May 11, 1926, to its predecessor in title and duly renewed by the opposer under the Act of 1946. As grounds of opposition, appellee alleged that the mark sought by appellant is applied to identical goods and so nearly resembles its own mark that confusion or mistake or deception of purchasers is likely.

Both parties filed stipulated facts in lieu of testimony.

It is stipulated by the parties that the goods involved are identical, namely, wire fencing of the heavy chain link type which is used largely for enclosing industrial plants, playgrounds and the like, and to some extent by home owners. The opposer's prior use of its mark "Cyclone" for these products is established by the stipulated facts and conceded by appellant.

Essentially, the position taken by the opposer before the examiner and the commissioner, and before this court, is that appellant's mark "Tornado" has an identical or substantially identical popular meaning as "Cyclone," particularly in view of the pictorial representation of a whirlwind in the former mark; and that simultaneous use of these marks on wire fencing is therefore likely to cause confusion as to origin, especially since the marks are arbitrary as applied to this type of goods. To support his position, appellee has relied upon certain dictionary definitions which he has called to the attention of the Patent Office tribunals and this court.

In Webster's New International Dictionary, 2nd Ed., we find the following:

"cyclone * * * 1. a) A wind blowing circularly, esp. in a storm. b) *Popularly, a tornado*. See Tornado, 2b. [Italics supplied.]

"2. A violent rotary storm in the solar photosphere. * * *

"4. *Meteorol.* A storm or system of winds, often violent in the tropics and moderate elsewhere, * * *. Called also *hurricane* in the West Indies and *typhoon* or *baguio* in the Philippine Islands and the China Sea. * * * The term *cyclone* should not be applied to the tornado, waterspout, or twister. * * *"

"tornado * * * 3. Any violent or destructive windstorm; a whirlwind."

Funk & Wagnalls New Standard Dictionary of the English Language (1938) contains the following definition:

"cyclone * * * 3. *Popularly,* any violent and destructive wind-storm, especially (in the United States) a *tornado*. [Italics supplied.] * * * *Syn.:* hurricane, tornado, ·typhoon, whirlwind."

Other definitions of similar import are called to our attention by appellee's counsel in his brief.

The examiner sustained appellee's opposition holding the marks were likely to cause confusion for the following reasons:

"Irrespective of what meteorological differences there might be between a tornado and cyclone, they are commonly understood by most persons to be circulatory windstorms of violent proportions, and to them they are synonymous in meaning and convey the same mental impression. As applied to fencing the notations 'Tornado' and 'Cyclone' are obviously arbitrary terms, with a possible remote suggestiveness of strength, and while these terms are

unlike in appearance and sound they are nevertheless deemed to be so nearly identical in meaning as to be clearly likely to give rise to confusion, or mistake, or deception of purchasers as to the origin thereof when applied contemporaneously thereto."

Upon appeal, the assistant commissioner affirmed the examiner's decision holding the marks sufficiently alike in connotation so that confusion was likely, notwithstanding that he thought there was an obvious distinction in appearance and sound between the two words. His reasons for so holding were substantially the same as those expressed in the above-quoted excerpt from the examiner's opinion, with the assistant commissioner particularly stressing that he regarded the appellee's mark as an arbitrary one when applied to the goods here involved.

Appellant contends (1) that the expressions "Tornado" and "Cyclone" are wholly different in sound and appearance and are not even closely related in meaning in the minds of purchasers of the parties' goods; and (2) that even if this is not so, the Commissioner of Patents has no right whatever, in view of the burdens upon an opposer, to rely solely upon dictionary definitions to determine the factual issue of the popular meaning of words. We shall consider the latter contention first:

▆▆ The meaning of these two words is the crux of the case. Courts take judicial notice of the meaning of words, Nix v. Hedden, 149 U.S. 304, 13 S.Ct. 881, 37 L.Ed. 745, and the court may always refer to standard dictionaries or other recognized authorities to refresh its memory and understanding as to the common meaning of language. United States v. Doragon Co. 12 Cust.App. 524, T.D. 40732, modified on other grounds, 13 Cust.App. 182. This court has often resorted to dictionary definitions to determine the ordinary significance and meaning of words in issue. See Lever Brothers Company v. Babson Brothers Company, 197 F.2d 531, 39 C.C.P.A. Patents, 1021; Eureka Williams Corp. v.

Willoughby Machine & Tool Co., 194 F.2d 543, 39 C.C.P.A., Patents, 832; also Cheek-Neal Coffee Co. v. Hal Dick Mfg. Co., 40 F.2d 106, 17 C.C.P.A., Patents, 1103, It is our opinion, therefore, that when opposer called to the attention of the examiner and the commissioner the above-quoted definitions in such recognized authorities as the Webster's and Funk & Wagnalls dictionaries referred to supra, those tribunals might properly rely upon these dictionary definitions as indicating the popular meaning of the terms in issue, in the absence of any sufficient reason why they should not do so. If appellant is of the opinion that these dictionary definitions are in error, he should have introduced pertinent recognized authorities, or other suitable evidence, for the consideration of the Patent Office tribunals and this court. Accordingly, we regard this contention as being without merit.[1]

▆ We turn now to appellant's first contention. In determining likelihood of confusion between marks on identical goods, it is proper to consider their appearance, sound and meaning. Firestone Tire & Rubber Co. v. Montgomery Ward & Co., 150 F.2d 439, 32 C.C.P.A., Patents, 1074. Clearly the involved marks "Tornado" and "Cyclone" do not look or sound alike. But a combination of all three factors need not necessarily exist, and an opposition to registration may be sustained if the marks are identical or so similar in meaning that confusion as to origin is deemed likely. See Norris, Inc., v. Charms Co., 111 F.2d 479, 27 C.C.P.A., Patents, 1174.

▆ On the basis of the dictionary definitions and similar authorities called to our attention, we think that the examiner and commissioner properly held that the marks were identical, or substantially so, in ordinary meaning. We concur also with those officials in the opinion that the mark "Cyclone" is essentially an arbitrary mark as applied to wire mesh fencing of the type here involved, although we think it is remotely suggestive of strength, as pointed out by the examiner. In view of this, we

---

1. We think this view is not inconsistent with Nix v. Hedden, supra, cited by appellant to supporting this contention.

think that contemporaneous use of appellant's and appellee's marks on wire fencing is likely to result in confusion or mistake in trade, notwithstanding that there is a distinction between the technical meteorological meanings of the two terms. We are primarily concerned with the meaning of the marks to members of the public at large who are prospective purchasers of such wire, and not to meteorological experts.

■ Appellant has cited certain cases to support his contention that the marks are not confusingly similar. Prior decisions are persuasive but not necessarily determinative in opposition proceedings wherein the question is whether marks are confusingly similar. Holland-Rantos Co., Inc., v. Henry Laboratories, Inc., 195 F.2d 325, 39 C.C.P.A., Patents, 877. Similarity of the marks must be determined largely as a matter of opinion, Lever Bros. Co. v. Babson Bros. Co., supra, and each case must rest on its own distinctive facts. North Star Manufacturing Co. v. Wells Lamont Corp., 193 F.2d 204, 39 C.C.P.A., Patents, 764.

All but one of the cases cited by appellant are, in our opinion, clearly inapposite because they involved marks which are highly suggestive, rather than arbitrary, and the marks did not have identical ordinary meanings; hence we think it unnecessary to discuss those cases.

The most pertinent case cited by appellant is Lever Bros. Co. v. Babson Bros. Co., supra. In that case the question before us was whether confusion in trade was likely if applicant's mark "Surge" and opposer's mark "Surf" were both applied to cleaning detergents. Opposer relied considerably on the fact that one of six dictionary definitions of "surge" was similar to the dictionary definition of "surf." We affirmed the concurrent holdings of the Patent Office tribunals that the marks were simple, well-known words which do not look or sound alike when considered in their *entireties.* We also agreed with their concurrent holdings that the two words do not have the same *ordinary* connotation or meaning to the average person,

notwithstanding that one of the six dictionary definitions of "surge" is similar to the definition of "surf." Our holding in this case that confusion is likely is based on our belief that the *popular* or *ordinary* meanings of "Tornado" and "Cyclone" are identical, although there are certain technical distinctions between the two terms. We see no inconsistency between this holding and our decision in the Lever Bros. case, and we do not regard that case as determinative in appellant's favor.

■ Even if we were in doubt as to likelihood of confusion in trade due to concurrent use of "Tornado" and "Cyclone" on wire fencing, we would resolve such doubt in favor of appellee in this case. Opposer's trade mark was registered in 1926, 22 years before appellant first used his mark in 1948. The parties stipulated that during the period from 1940 through 1949 opposer sold about $90,000,000 worth of "Cyclone" wire fence and spent about $1,250,000 for advertising; that about 90% of its advertising expenditure was directed to retail consumer advertising; and that as a result of long and extensive use of its mark in the advertising and sale and erection of "Cyclone" brand fence, and related products, opposer has a nationwide good will in the said mark as used in connection with such goods. According to the stipulations, appellant had spent about $10,000 from April, 1948, to September, 1950, to advertise his goods sold under the mark "Tornado", and had bid on 1,400 jobs and filled contracts in approximately 900 of the same; appellant's dollar volume is not disclosed. This court has stated that one who adopts a valid mark and establishes a large business in which the mark is used should have all doubts resolved in his favor as against newcomers in an opposition proceeding. Kroger Grocery & Baking Company v. Blue Earth Canning Co., 88 F.2d 725, 24 C.C.P.A., Patents, 1098. We think the latter rule must be applied with discretion, depending on the nature of the marks and goods involved and the particular facts of the case; yet, we think it is particularly applicable when, as here, the marks are essentially arbitrary as applied

to the goods involved, and applicant has entered the field considerably later than the opposer.

We note also that appellant's position is materially different from that of the applicant in the Lever Bros. case, supra, upon which appellant relies heavily. In that case, opposer first used "Surf" on detergents in 1935 and the applicant first used "Surge" on detergents in 1947. However, the applicant had used "Surge" on milking machines since 1925; had continuously expanded use of its mark to related products and owned 23 registrations for the mark "Surge" for use on such products; had sold its milking machines in cartons labelled "Surge" and had included therein an unlabelled package of detergent prior to and after 1935; and had expended large sums for advertising "Surge" products and sold large quantities of merchandise to the dairy industry.

In view of the foregoing, the decision of the commissioner is hereby affirmed.

Affirmed.