47 CCPA

**MILWAUKEE NUT COMPANY**

v.

**BREWSTER FOOD SERVICE.**

Patent Appeal No. 6529.

United States Court of Customs and Patent Appeals.

April 6, 1960.

Wheeler, Wheeler & Wheeler, Milwaukee, Wisc. (S. L. Wheeler, Milwaukee, Wisc., of counsel), for appellant.

James R. McKnight, Chicago, Ill., for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

MARTIN, Judge.

Milwaukee Nut Company filed an application to register "Schnaps nuts," which was amended to "Schnaps" by deleting "nuts,"[1] for use on shelled salted nuts. An opposition to that registration was filed by Brewster Food Service, owner of the registered mark "Beer Nuts"[2] for use on shelled and salted nuts. That opposition was sustained by

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of* Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28 United States Code.

1. Application Serial No. 692,483, filed August 4, 1955, first use alleged October 20, 1954, first use in commerce alleged January 5, 1955.

2. Registration 605,905 issued May 10, 1955, filed April 30, 1955.

the Trademark Trial and Appeal Board which found that "Schnaps", when applied to the goods of appellant, was likely to cause confusion or mistake or to deceive purchasers. This appeal is from that decision.

Both parties took testimony. The evidence shows that the goods sold by the parties under the respective marks are salted redskin peanuts having a sweetened coating. Each sells its peanuts in cellophane bags, primarily in a ten cent size, through the same channels, jobbers and route men, for ultimate sale to the tavern trade. It has been shown that the parties' peanuts are usually purchased by patrons of taverns for consumption on the premises with various forms of liquid refreshment. The evidence also establishes that appellant knew of appellee's use of "Beer Nuts" on packages of sweetened nuts prior to the time it adopted its mark, and that the "Schnaps" nuts package, besides the mark, has the figure of a glass of beer and the phrase " 'So Good With Beer' " on its face.

The board found that the marks neither looked nor sounded alike, and that "schnaps," unlike beer, means a strong liquor. However, it stated that—

" * * * the mark 'Schnaps,' as used in conjunction with the word nuts, conveys the same general commercial impression as 'Beer Nuts,' that is to say, nuts intended to be consumed with alcoholic beverages. In addition, applicant features the slogan 'So Good With Beer' and the representation of a glass of beer on its packages of 'Schnaps' nuts."

For those reasons the board concluded that there was a "reasonable likelihood" of confusion, mistake or purchaser deception within the meaning of Section 2(d) of the Lanham Act, 15 U.S.C.A. § 1052(d).

The board dismissed certain testimony whch tends to show that "Beer Nuts" is the common descriptive name for salted redskin peanuts as being, if anything, "a localism restricted to certain small town areas in Wisconsin."

Appellant argues that such testimony should not have been summarily dismissed, contending that the confusion, if any, which may exist is engendered by appellee's use of "Beer Nuts" as a mark and is *not* due to any confusion between the marks of the parties. Appellant also asserts that the marks are sufficiently different to preclude likelihood of confusion.

It is appellee's position that the marks are confusingly similar because they convey the same impression. In support of its position, appellee alleges that "schnaps" is sometimes used synonymously with beer by the "common man," points out that the goods are substantially identical, and argues that the goods are cheap items quickly sold for immediate consumption. Appellee further asserts that appellant has deliberately designed its package and mark to cause confusion, and that the evidence shows actual confusion. Appellee maintains that we may not consider evidence which may tend to show that its mark is descriptive or generic, and that in any event the evidence that "Beer Nuts" may be descriptive is merely a localism. Finally, appellee reminds us that if any doubt as to confusion should arise in our minds, in accordance with well established principles, that doubt must be resolved against the newcomer.

The goods are identical as is the class of purchasers of the merchandise. "Beer Nuts" and "Schnaps" nuts are different in sound, appearance and meaning. The only similarity resides in the suggestiveness of the use of the goods, i. e., to eat the nuts when imbibing beer or liquor.

Obviously it was the purpose of both parties to employ words that are suggestive of the use of the merchandise. In doing so appellee necessarily foreclosed the possibility of obtaining the scope of protection that a purely arbitrary mark would deserve.

Appellee's testimony that one of the partners in the firm was sold packages

of "Schnaps" nuts when requesting "Beer Nuts" in various taverns in the common trade area of the parties merely shows that appellee, in adopting a word which is highly suggestive to the trade to which it was catering, ran the risk of having similar merchandise sold by others for the same purpose to the same trade offered to the witness when he requested "Beer Nuts." [3]

We do not believe that confusion as to scource is the significant factor in this case. Rather, it appears to us that the dominant feature of this controversy is the lack of trademark significance inherent in "Beer Nuts." We believe this to be so irrespective of the fact that appellee has sold 20 million bags of its nuts having "Beer Nuts" thereon and has advertised its mark in various trade journals.

Furthermore, if we permitted appellee to prevail here, we would be saying, in effect, that no one else could sell this type of merchandise employing a trademark suggestive of the most appealing use of the goods. We do not believe that appellee's mark warrants such protection.

Appellee has cited Hancock v. American Steel & Wire Co. of New Jersey, Etc., 203 F.2d 737, 40 CCPA 931, in support of its contention. There the marks "Cyclone" and "Tornado," used on wire fencing and similar articles, were held to be confusingly similar. We believe that case is distinguishable from the one at bar. This court held that "Cyclone" and "Tornado" as used on the respective merchandise were essentially arbitrary and that they had identical dictionary meanings. Here "Schnaps" and "Beer" do not have similar dictionary meanings nor are they entirely arbitrary terms as

applied to nuts intended for sale in taverns to be eaten with drinks.

For the above reasons we reverse the decision of the Trademark Trial and Appeal Board.

Reversed.

47 CCPA

---

3. The memoranda which the witness made following his visits to the taverns indicate that of the 21 he entered, in 20 of them he asked for "Beer nuts", and in the other there is no indication of what was requested. When testifying, the witness stated that "In each of these calls I asked for Beer Nut peanuts." At least once in his testimony, however, the witness stated that upon entering one of the taverns he "asked for Beer Nuts." Since he testified that the memoranda were made "after each call in the taverns," they are probably more accurate recollections of what was requested than is the testimony given more than three months later.