### CLAREMONT POLYCHEMICAL CORPORATION, Appellant,

v.

### ATLANTIC POWDERED METALS, INC., Appellee.

Patent Appeal No. 9058.

United States Court of Customs and Patent Appeals.

July 19, 1973.

Baldwin, J., dissented and filed opinion.

A. Robert Theibault, Wilkinson, Mawhinney & Theibault, Washington, D. C., attorneys of record for appellant. Raymond J. Mawhinney, Washington, D. C., of counsel.

Arthur B. Colvin, New York City, attorney of record for appellee. Mark T. Basseches, New York City, of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN and LANE, Judges, and ALMOND, Senior Judge.

RICH, Judge.

This appeal [1] is from the decision of the Patent Office Trademark Trial and Appeal Board,[2] adhered to on reconsideration, dismissing appellant's opposition to the registration of ETERNAGOLD on the Principle Register, application serial No. 311,812, filed Nov. 12, 1968, for coated metallic flake pigments used as a colorant for plastics, paints and the like. Opposition is predicated upon appellant's registration No. 746,123, issued Mar. 5,

[1] The Petition of Appeal states that appellant has complied with the provisions of 35 U.S.C. §§ 142 and 143, which pertain to appeals in patent rather than trademark cases. However, we have con-

strued the appeal as if filed pursuant to 15 U.S.C. § 1071(a), the provision governing appeals to this court in trademark cases.

[2] Digested at 171 USPQ 814 (1971).

1963, of DURAGOLD for bronze gold pigment for decorative uses and likelihood of confusion, mistake, or deception under 15 U.S.C. § 1052(d). We affirm.

Neither party took testimony, appellant relying solely on its prior registration, the date of which antedates appellee's asserted date of first use. Accordingly, the only issue for our disposition is whether appellee's mark ETERNA-GOLD so resembles appellant's mark as to be "likely to cause confusion, or to cause mistake, or to deceive."

In a prior case earlier this term we affirmed the dismissal of an opposition by the same appellant as here, based upon the same registration of DURA-GOLD, to the registration of the term EVERGOLD. Claremont Polychemical Corp. v. Atlantic Powdered Metals, Inc., 470 F.2d 636 (CCPA 1972). In that case we said:

> We have considered the marks in their entirety as well as the dictionary definitions of the prefixes DURA and EVER, which we may indeed do "to determine the ordinary significance and meanings of words," *Hancock* [v. American Steel & Wire Co., of New Jersey, 203 F.2d 737, 40 CCPA 931 (1953)], supra, and find no error in the conclusion of the board that concurrent use of EVERGOLD and DURAGOLD on the goods named would be unlikely to cause confusion, mistake, or deception within the meaning of 15 U.S.C. § 1052(d). The prefixes EVER and DURA are very different in sound and appearance and both are suggestive or descriptive of alleged properties of the goods.

While we also noted in that case that "prior decisions involving *other* marks and *different* goods are of little value as

precedents" and "Each case must be decided on its own facts," we think that the above statement from the prior case represents more than mere *stare decisis* and applies equally well to the facts here. We note that the reasons for the appeal given by appellant in its Notice of Appeal and the "Errors Relied Upon" in its brief are substantially identical to those given in the previous case. The dictionary definition of "eternal," from which ETERNA is derived, is reproduced in the margin [3] and further supports our conclusion. The goods here are apparently identical to those in the prior case.[4]

The decision of the board is affirmed.

Affirmed.

BALDWIN, Judge (dissenting).

I cannot agree that there would be no likelihood of confusion as to source when these marks are considered in conjunction with the goods on which they are used.

While I dissented in the previous DURAGOLD case, Claremont Polychemical Corp. v. Atlantic Powdered Metals, Inc., 470 F.2d 636, 637 (CCPA 1972), I fully accept the majority decision therein as the law governing that case. Nevertheless, I would not extend that decision to cover the facts of the present case, in which it has been made clear that the goods are essentially *identical*. As the majority here points out, in the previous case the goods were described merely as "powdered metal." There were no indications in that case as to what the powdered metal was, what it was used for, or what channels of trade were involved. It being clear in the present case that the goods are both metal pigments, the previous case, which

3. "*Eternal* * * * Of infinite duration; everlasting;—in different contexts: without beginning; or end; without beginning; without end. Often, in Scriptural connections or allusions, *eternal* implies a state or quality other than mere duration; as the *eternal* life is a life of celestial bliss." Webster's New International Dictionary (1932).

4. Appellee's application originally specified "metal powder," the same goods specified in its application in the prior case. In response to the examiner's assertion that the recitation of goods was indefinite, appellee revised the description of goods to the present recitation to "more specifically * * * cite the type of goods to which the applicant applies its mark."

involved *another* mark on *different* goods, is of little value as a precedent.

It appears to me that appellee is well on its way to obtaining a family of marks, the front portion of which means durable and the back portion of which is GOLD, despite the fact that appellant had established its rights in DURA-GOLD, for the identical goods, long before appellee had used its marks. The damage to appellant's rights in DURA-GOLD are clear.

I would reverse the decision of the board.