8/17/01

THIS DISPOSITION
IS CITABLE AS PRECEDENT
OF THE T.T.A.B.

GDH/gdh
Paper No. 9

**UNITED STATES PATENT AND TRADEMARK OFFICE**

————

**Trademark Trial and Appeal Board**

————

In re Broyhill Furniture Industries, Inc.

————

Serial No. 75/473,959

————

Kenneth Solomon of Howell & Haferkamp, L.C. for Broyhill Furniture Industries, Inc.

Suellen C. Hickey, Trademark Examining Attorney, Law Office 112 (Janice O'Lear, Managing Attorney).

————

Before Simms, Seeherman and Hohein, Administrative Trademark Judges.

Opinion by Hohein, Administrative Trademark Judges:

Broyhill Furniture Industries, Inc., a North Carolina corporation with a location in Lenoir, North Carolina, has filed an application to register the term "TOSCANA" as a trademark for goods identified as "furniture".[1]

---

[1] Ser. No. 75/473,959, filed on April 24, 1998, based upon an allegation of a bona fide intention to use such term in commerce. An

Registration has been finally refused under Section 2(e)(3) of the Trademark Act, 15 U.S.C. §1052(e)(3), on the ground that applicant's mark is primarily geographically deceptively misdescriptive of applicant's goods.[2]

Applicant has appealed. Briefs have been filed but an oral hearing was not requested. We affirm the refusal to register.

Preliminarily, we note that the record in this case establishes that, under the doctrine of foreign equivalents, the term "TOSCANA" is an Italian word which means "Tuscany" in English and designates a region in Italy. Such term, moreover, has no other meaning. In this regard, the excerpt from Cassell's Italian Dictionary (1958) at 534 defines "Toscana" as "Tuscany," while the listing in Merriam-Webster's Geographical Dictionary (3d ed. 1997) at 1194 of "Toscana" similarly refers to "see TUSCANY," with "Tuscany ... *or Ital.* Toscana" in turn being defined at 1210 as:

> Autonomous region, W Italy; on Tyrrhenian
> and Ligurian seas bet. Lazio and Liguria; *
> [capital] Florence; ... considerable mineral

---

amendment to allege use was subsequently filed on November 10, 1998 which claims dates of first use of October 2, 1998.

[2] Although registration has also been finally refused in view of applicant's failure to submit a written translation of the term "TOSCANA," such requirement is considered moot inasmuch as applicant, in its appeal brief, states that it "does not dispute that the mark, TOSCANA[,] is the Italian word for Tuscany, a region in Italy" and the Examining Attorney in her brief has not addressed the issue.

> wealth (lead, zinc, mercury, copper,
> lignite, marble); chemical, textile,
> metallurgical, shipbuilding, and handicraft
> industries; livestock, olives, vines.  Chief
> cities:  Florence, Livorno, Prato, Pisa.
> ....
>     *History:*  A Frankish margravate c. 9th
> cent. A.D.; in 12th and 13th cents. divided
> into several independent city-states,
> subsequently reunited under Medici dukes of
> Florence ... ; became grand duchy 16th
> cent.; passed to house of Lorraine 1737 and
> to Sardinia and the Kingdom of Italy in
> 1860s.  ....  Present region estab. 1948,
> received limited autonomy 1970.

In a similar vein, the excerpt from volume 22 of <u>Collier's</u>

<u>Encyclopedia</u> at 555 lists "TUSCANY ... (*It.* Toscana)" as "a

region in north-central Italy, while volume 16 of <u>The World Book</u>

<u>Encyclopedia</u> at 8225 sets forth "TUSCANY ... (Italian name,

TOSCANA)" as:

> [A] political region, or state, in Italy.
> It lies on the western coast of Italy, and
> north of the city of Rome.  ....  It covers
> an area of 8,861 square miles and has a
> population of 3,216,100.  Tuscany is an
> important agricultural and industrial
> center.  Tuscan straw hats are known all
> over the world as "Leghorns."  Other
> important manufactures include cotton,
> woolen, and silk materials.  In Tuscany are
> the famous Italian cities of Florence, Pisa,
> Siena, and Leghorn (Livorno).
>     Tuscany has long been an important
> Italian center of art and learning.  ....

Thus, it is clear that the sole meaning of the Italian term

"TOSCANA" is "Tuscany," a region in Italy.

In order to establish a *prima facie* case for refusal on the ground that a mark is primarily geographically deceptively misdescriptive of an applicant's goods within the meaning of Section 2(e)(3) of the statute, the Examining Attorney must show that: (1) the primary significance of the mark is a generally known geographic place; and (2) purchasers would be likely to think or reasonably believe that the applicant's goods originate in or are connected with the geographic place identified by the mark, that is, they would make a goods/place association, when in fact the goods do not originate in or are not connected with the place identified by the mark. See, e.g., In re Save Venice New York, Inc., No. 00-1458, slip op. at 3 (Fed. Cir. July 27, 2001); In re Wada, 194 F.3d 1297, 52 USPQ 1539, 1540 (Fed. Cir. 1999); In re Societe Generale des Eaux Minerales de Vittel S.A., 824 F.2d 957, 3 USPQ2d 1450, 1452 (Fed. Cir. 1987); In re Loew's Theatres, Inc., 769 F.2d 764, 226 USPQ 865, 867 (Fed. Cir. 1985); and In re Nantucket, Inc., 677 F.2d 95, 213 USPQ 889, 892-93 (CCPA 1982). However, "[a] mark is not primarily geographic where the geographic meaning is obscure, minor, remote, or not likely to be connected with the goods." In re Wada, supra, *citing* In re Nantucket, Inc., supra at 892.

Applicant argues that the Examining Attorney "erred in finding [that] the primary significance of TOSCANA as applied to

*furniture* is geographic."  Applicant also contends that the

Examining Attorney has not met her "burden of establishing that

the public is likely to believe that the goods originate in this

region."  Specifically, as to the first prong of the test for

whether a mark is primarily geographically deceptively

misdescriptive, applicant asserts that furniture "is customarily

given trademarks that are geographic locations, probably

deriving from the traditional use of geographical names (such as

American Colonial or French Provincial) to refer to furniture

styles rather than manufacturing origin."  Although applicant

insists that "[a] simple trademark search of various geographic

locations, particularly those locations associated with a

distinctive style, theme, motif or the like, readily

demonstrates the common practice and acceptance of use of

geographic names as trademarks for furniture," the sole evidence

cited by applicant in support of its assertion is a list of five

third-party registrations which pertain to furniture and are for

the marks "ROMA," "BOMBAY," "BRAZIL," "BARCELONA" and

"NOTTINGHAM FINE FURNITURE" (with the words "FINE FURNITURE"

disclaimed).[3]  According to applicant, none of the third-party

---

[3] Although the Examining Attorney, in her brief, has objected to such evidence "as being unsupported" in that a mere listing of third-party registrations "is not credible evidence of the existence" thereof and that copies of such registrations or their electronic equivalents, in the form of printouts from the electronic records of the United States Patent and Trademark Office, need to be submitted in order to make the registrations properly of record," the objection is considered to have

registrations contains either a disclaimer of the geographic location or issued on the basis of a showing of acquired distinctiveness.

In view thereof, applicant concludes that:

Because of the long-standing industry practice of using names of geographic locations as trademarks [for furniture], customers of such furniture have become accustomed to seeing and so recognize such geographic designations as trademarks distinguishing goods of one manufacturer from those of another, while at the same time suggesting a style or mood. Thus, the customers certainly do not view such place names as indicative of the origin of the furniture itself, especially if a particular style, theme, motif or the like is associated with the named location.

In other words, it is the custom of the furniture industry to use the names of locations strongly associated with a particular style, theme, motif or the like in a fanciful way to suggest a furniture style related to that style, theme, motif or the like. Therefore, the primary significance of such geographical place names, when used on furniture, and in the context of industry practice, is not geographic and the purchasing public does not believe that the furniture originated in that origin. Rather the public recognizes that the geographic name is used in a

_____

been waived since it was not interposed in response to applicant's reliance on such listing in its response to the initial Office Action. Accordingly, and while we do not have the file history for any of the third-party registrations or know whether any of such registrations issued on the Supplemental Register instead of the Principal Register, applicant's evidence regarding certain third-party registrations has been considered for whatever limited probative value such evidence may have.

6

fanciful way to suggest a certain style, theme or motif.

This is the case, in particular, with TOSCANA. ....

There is no evidence, however, which substantiates applicant's assertions. The third-party registrations upon which it relies are not evidence that the marks which are the subjects thereof are in use and that the relevant purchasing public is familiar therewith. See, e.g., AMF Inc. v. American Leisure Products, Inc., 474 F.2d 1403, 177 USPQ 268, 269 (CCPA 1973); In re Hub Distributing, Inc., 218 USPQ 284, 285 (TTAB 1983); and National Aeronautics & Space Administration v. Record Chemical Co., Inc., 185 USPQ 563, 567 (TTAB 1975). Each case, moreover, must in any event be determined on its own merits and there is nothing in this record to indicate the reasons for the allowance of the third-party registrations upon which applicant relies. See, e.g., In re Nett Designs Inc., 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001) ["Even if some prior registrations had some characteristics similar to [applicant's] application, the PTO's allowance of such prior registrations does not bind the Board"] and In re Pennzoil Products Co., 20 USQP2d 1753, 1758 (TTAB 1991). Furthermore, as used in connection with furniture, while the relatively few geographical

terms of which we are aware and may judicially notice,[4] such as

"Danish," "Scandinavian" or "Mediterranean," do indeed designate

particular styles of furniture,[5] those terms would be

---

[4] It is settled that the Board may properly take judicial notice of entries in dictionaries and other standard reference works. <u>See</u>, <u>e.g.</u>, In re Hartop & Brandes, 311 F.2d 249, 135 USPQ 419, 423 at n. 6 (CCPA 1962); Hancock v. American Steel & Wire Co. of New Jersey, 203 F.2d 737, 97 USPQ 330, 332 (CCPA 1953); and University of Notre Dame du Lac v. J. C. Gourmet Food Imports Co., Inc., 213 USPQ 594, 596 (TTAB 1982), *aff'd*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983).

[5] For example, <u>The Encyclopedia of Furniture</u> (3rd ed. 1965) at 158 contains the entry "**DANISH.** See SCANDINAVIA" and at 362 discusses "**SCANDINAVIA**" as a "style" of furniture. A more extensive discussion of "SCANDINAVIAN FURNITURE" is found in <u>The Complete Guide to Furniture Styles</u> (1969) at 442-49. In addition, the handbook <u>Seng Furniture Facts</u> (22nd ed. 1968) at 62 lists "Scandinavian" furniture as a style which, in terms of general attributes, "is fundamentally decorative, its renditions running to chaste, even severe, silhouettes and an almost total absence of ornamental flourishes" and further notes that "[t]his style's designers confine themselves to light, plain woods (walnut, teak) in simple curves and roundings, with tapered feet and flat turnings." Such reference, as to suggestions for use of Scandinavian furniture, states that:

> Modern Scandinavian stylings are currently in heavy demand for formal and informal living areas where unstylized treatment prevails. .... There is a strong trend for furniture stores, particularly in the larger population centers, to feature Scandinavian furniture exclusively ....

The same handbook at 54 discusses "Mediterranean" style furniture, stating as to its general attributes that:

> Mediterranean furniture runs the gamut from almost primitively functional to extremely formal. Spanish pieces favor the vigorous, masculine look with deep moldings. Italian interpretations are more restrained. They are "built to the floor" with comparatively short, squat, ornately turned legs and feet. .... Pecan, chestnut, walnut, red pine and mahogany are favorite woods.

As to suggestions for use, such reference mentions that "Mediterranean styles blend well with all the 'country', or provincial, stylings except in their ultra-classic forms" and indicates that "[t]hey may be used with contemporary furniture if it is not too delicate."

unregistrable as merely descriptive, if not generic,

designations under Section 2(e)(1) of the Trademark Act, 15

U.S.C §1052(e)(1), rather than simply suggesting, as asserted by

applicant, the geographical source of the furniture's

production.  Lastly, while we observe that the record contains

various website references to "Tuscan furniture" and "Tuscany

furniture," such evidence is at best equivocal as to whether

such phrases refer to furniture which is made in Tuscany or

whether there is in fact a style of furniture which is so known.[6]

Applicant additionally argues that Tuscany is famous

for its art, literature, history and culture, but not for its

furniture.  Citing, in particular, various encyclopedia articles

on Tuscany which it has made of record, applicant contends that:

> Tuscany is not known for its furniture,
> but it is closely associated with the art
> and style of the Renaissance.  Tuscany,
> Italy is known primarily for its historical
> pre-eminence in the arts and learning.  ....
> Tuscany's capital, Florence, is renowned as
> one of the world's greatest centers of
> artistic treasures and traditions and the
> birthplace of the Renaissance, but its other
> cities, such as Pisa and Siena[,] are well
> known for their Renaissance contributions as
> well.  ....  Tuscany and Florence in
> particular are famous as the home to some of
> the world's greatest artists and writers,
> including Leonardo da Vinci, Michelangelo,

---

[6] In view thereof, a remand of this case to the Examining Attorney, pursuant to Trademark Rule 2.142(f)(1), to consider a refusal on the grounds of mere descriptiveness or, perhaps, genericness under Section 2(e)(1) of the statute does not appear to be warranted.

Giotto, Dante, and Boccaccio, the great
scientist Galileo, and the political
theorist Machiavelli. .... As a result,
today tourism [is] a major economic activity
of the city renowned for its art galleries,
churches and museums.

Thus, for hundreds of years, Tuscany
was the center of one of the greatest
periods of cultural enrichment in history.
Its fame and reputation today, and its
attraction to tourists, are due, therefore,
primarily to its leadership and lasting
contribution in the Renaissance.

We agree with the Examining Attorney, however, that "[t]he primary significance of the term TOSCANA, or its English translation TUSCANY, is geographic." The dictionary definitions and encyclopedia articles previously noted, as well as the excerpt of record from the on-line Encarta Encyclopedia, which among other things indicates that Tuscany is a "region in northern Italy, east of the Ligurian Sea and the Tyrrhenian Sea," with Florence as its capital and having an area of "8877 sq mi" and a 1991 population of "3,599,085," clearly establish that, as stated by the Examining Attorney in her brief, "the general public knows this geographic place and it is neither obscure nor remote," given its location, size and density. Moreover, as the Examining Attorney accurately points out, "applicant has not offered any other definitions of TOSCANA to rebut the examining attorney's *prima facie* case, which proves that the primary significance of the mark is geographic."

10

We find, therefore, that there is substantial evidence to establish that the primary significance of the mark "TOSCANA," which is the Italian word for the region in Italy known in English by the name "Tuscany," is a generally known geographic place. The fact, furthermore, that the record shows that Tuscany was the center for Renaissance art, literature, history and culture does not detract from the primary significance of the mark "TOSCANA" as designating the geographical locality where such activity occurred. See, e.g., In re Save Venice New York, Inc., supra at 4 and In re Jack's Hi-Grade Foods, Inc., 226 USPQ 1028, 1029 (TTAB 1985).

Inasmuch as the first prong of the test for whether applicant's mark is primarily geographically deceptively misdescriptive has been satisfied, and since applicant, as to the second prong of such test, has admitted in its response to the initial Office Action that its goods "do not emanate from Tuscany, Italy" and has reiterated in its brief that such goods "do not originate in the place the Examiner asserts the subject mark identifies," the sole issue remaining is whether consumers would make a goods/place association upon encountering the mark "TOSCANA" used in connection with applicant's furniture. Applicant asserts that, as shown by the record, "Tuscany has a reputation for several industries, but not the furniture industry." Instead, according to applicant, the record reveals

that "Tuscany's primary industries include wine and wine grapes, wheat, corn, chestnuts, fruit, woolen and cotton items, olives, glass, and even chemicals, machinery, ceramics, iron and steel."

Specifically, in addition to the relevant portions of the excerpts previously quoted, an article about Tuscany in volume 27 of The Encyclopedia Americana (int'l ed.) at 287 states in pertinent part that:

> **Agriculture.** Except where altitude forbids, wheat, vines, fruit, and olives do well in Tuscany's Mediterranean climate. The oil of Lucca and the wine of the Chianti hills are particularly renowned. Low average temperatures discourage the cultivation of citrus plants, but corn and animal fodder flourish on the damper lowland soils.
> ....
> **Industry and transportation.** Tuscany's industries stem from its traditional skills rather than from any natural advantages. Metal smelting, chemical manufacture, oil refining, and engineering (including shipbuilding) are important at Leghorn; the manufacture of woolen fabrics at Prato; and food processing, electrical engineering, and the manufacture of textiles, chemicals, and precision instruments at Pistoia and Florence. Handicraft industries, particularly in wood, leather, metal, and pottery, are stimulated by the tourist attractions of Florence, Pisa, and Siena.
> ....

Similarly, the article from Collier's Encyclopedia, supra at 556, indicates in relevant part:

> **Economic Resources.** Although much of the land [of Tuscany] is under cereal crops, principally wheat, tree crops are equally

12

important. The Chianti vineyards produce ... over a quarter of the total Tuscan wine production. Olives are important particularly around Lucca and Pisa, and chestnuts and fruits are grown on a lesser scale. ....

The woolen industry of Prato is a remnant of the cloth trade of the Middle Ages. There are modern cotton mills at Florence, Leghorn, and Pisa. Mining and quarrying are traditional and still important. Iron pyrite for the preparation of sulfuric acid and superphosphates is processed in west Tuscany. Mercury is mined at Monte Amiata, salt at Volterra, and borax in the Cecina Basin. Building materials, principally Carrara marble, are produced in the Apuanian Alps.

Major industries of Tuscany are the iron and steel works at Piombino, the shipyards of Leghorn, and the motorcycle factories at Pontedera. Tourism is also important.

In a similar vein, the printout from the on-line <u>Encarta</u> <u>Encyclopedia</u> states in pertinent part that:

Agricultural products include wheat, corn, wine grapes, olives, and tobacco. The most important manufactures are wool and cotton textiles, chemicals, machinery, glass, and ceramics.

In view of such evidence, applicant stresses that:

[I]n none of the located encyclopedic references to Tuscany ... is there any mention of furniture. But even if mention is so made or even if furniture is a major industry, such does not establish such as [sic] association in the public's mind. Tuscany's commerce lies heavily with other products and its fame rests in its contribution to the arts, culture and literature.

Furthermore, as to the evidence, discussed more fully below, upon which the Examining Attorney relies to demonstrate a goods/place association between furniture and Tuscany, applicant maintains that:

> In the first Office Action, the Examiner cited four casual ["NEXIS/LEXIS"] references ... out of presumably millions of articles. This does not establish that Tuscany is especially known for furniture, that such is recognized by consumers or that consumers would then view the use of the mark TOSCANA as a trademark as indicating the origin [of production] of the goods. It can be expected that some reference to furniture can be found with respect to almost any sizable geographic location; however, that does not establish that the locale is one that would be recognized as a furniture manufacturing center. Indeed, a closer look at the citations indicates that the substance of them does *not* indicate a Tuscan reputation for furniture. ....
>
> In the second (and final) Office Action, the Examiner produced several other references, but even these newly cited references fail to establish that Tuscany has a reputation for furniture-making. In fact, the dictionary excerpt cited by the Examiner supports Applicant's point: it identifies quite a few industries associated with Tuscany (minerals, chemicals, textiles, metallurgy, shipbuilding, handcrafts, livestock, olives, vines), but furniture is conspicuously absent from the list. And the articles cited by the Examiner are hardly any better. They cite Tuscany in association with such things as anchovies and wines, mention that a house in Tuscany contains furniture, report that Tuscany is attempting to begin exporting furniture to China, and the like, but nowhere provide any relevant evidence suggesting a current

14

> reputation in the U.S. for furniture originating in Tuscany. Thus, the evidence produced by the Examiner does not establish that purchasers would expect the goods ... recited in the application to have their origin in the geographical locality named in the mark.

We concur with the Examining Attorney that a *prima facie* case has been shown and that the evidence offered by applicant is insufficient to rebut such showing. As she correctly points out in her brief:

> To establish a goods/place association, the examining attorney must only show a "reasonable basis" for concluding that the public is likely to believe that the mark identifies the place from which the goods originate. *In re Loews Theatres, Inc.*, ... 226 USPQ ... [at] 868 .... The examining attorney need not show the fame of the place, but rather the likelihood that the particular place will be associated with the particular goods. *Id*.

We agree with the Examining Attorney that "[t]he evidence of record clearly indicates that there is a reasonable basis for concluding that there is a public association between the applicant's furniture and the geographic region of TOSCANA, or its English equivalent TUSCANY." Applicant's point-of-purchase display catalogs, which were submitted as specimens of use of the term "TOSCANA," readily foster a goods/place association between its furniture and Tuscany by referring to "Europe's Mediterranean coast" and "European sensibility" as follows:

15

"From Europe's Mediterranean coast to American homes in every region:  Toscana by Broyhill Premier brings an elegant European sensibility to casually elegant homes"; and

"Europe's Mediterranean coast is known for its richly textured landscape, effortless blend of cultures, and age-old architecture. Toscana by Broyhill Premier celebrates a fine European sensibility with exuberant styling, beautiful ornamentation, and impressive proportions."

In particular, the record includes the following relevant excerpts which, the Examining Attorney notes, were retrieved from a search of the "NEXIS/LEXIS" computerized database (**emphasis added**):

"Guilio also has developed his own hand-crafted private label line, Patina, which has a less formal look and resembles antique **furniture from Tuscany**." -- Chicago Sun-Times, August 23, 1998 (article headlined:  "Unmatched beauty; today's kitchen cabinets look more like furniture than the plain boxes of yesterday");

"European-influenced, **Tuscany-finished furniture**." -- News & Record (Greensboro, NC), April 23, 1998; and

"And exports of wine, food, fashion, **furniture** and other goods **from Tuscany** to North America have increased 60 percent in the same period, to about 12.5 percent of all goods exported from Italy ...." -- Dallas Morning News, August 1, 1997.

In addition, she observes that, "[i]n light of the growing prevalence of businesses using the Internet to sell their goods," the record contains printouts from "several websites

16

identifying businesses that sell furniture made in Tuscany," of which the following are particularly pertinent (**emphasis added**):

> "A delightful and enchanting piece of Greece and Italy sits in the lovely riverside town of Lambertville, New Jersey, where people can leisurely explore treasures from the regions of Greece and Italy .... This special place is The Urban Archaeologist, where a vast collection of unique gifts, home and garden furnishings, hand made jewelry & leather items are available ....
> ....
> At the store you can find a variety of artifacts such as old olive jars on wrought iron bases, Greek mahogany and **Tuscan furniture** and accents.  ...." --
> http://www.-urbanarchaeologist.com/whoweare.-htm;

> "The holder, Mr. Marcello Bartalini, has always addressed his firm toward the typical characteristics of the **Tuscan furniture production**:  quality, service and safety adding, from ...1965 to today, also much experience." --
> http://www.lacevmobilacev.-it/firm.html;

> "Business Name:  Made in Italy Address:  31 N. Main Street  City:  New Hope State:  PA ....  Brief Description:  We import directly from Italy only the finest in **handcrafted Furniture from Tuscan**, Venetian Glass Jewelry, Leather, come see!!" --
> http://www.asact.infotrends.com/freelistings/retail.htm ;

> "Painted furniture from Bassano, Sicilian ceramics and diverting wrought-iron **furniture from Tuscany**, in strong Mediterranean colours.  Nice prices" --
> http://www.timeout.com/rome/serv/Design_and_-Household.htm ;

> "**Tuscany** is strengthening its cooperation with China as far as shoe and **furniture exports** are concerned through a number of promotional initiatives, joint ventures, [and] sale[s] licenses.
> ....
> As for **furniture, Tuscany** will have a permanent show room in Shanghai set up in cooperation with a state run Chinese company which is already involved in import-exports of **pieces of furniture**.  This initiative has been promoted by the Experimental Center of Furniture from Poggibonsi which gathers hundreds of companies located in Siena and Florence ...." -- http://www.Italianetwork.-it/studi/studi43/studi_e.htm;

Finally, as also noted by the Examining Attorney, the record contains "copies of online advertisements for villa and apartment rentals in Tuscany, which refer to 'local,' 'typical,' 'traditional' and 'authentic' Tuscan furniture."  The following excerpts are representative (**emphasis added**):

> "The rooms are light and furnished tastefully with local **Tuscan furniture**." -- http://www.villa-rental.com/Italy/Tuscany-/La_Fontanella/index.htm;

> "COUNTRY LIFE IN TOSCANA.  ....  The villa can be utilized ... in one large appartment [sic] for seven  persons .... Furnished with typical **tuscan furniture**, the appartements [sic] have all comforts ...." --
> http://www.travel.it.immobil/grutta/grutta.-htm;

> "All the appartments [sic] ... have their own garden and have been furnished with typical **Tuscan furniture**." -- http://www.fattoriadimigilarino.it/piauk.htm;

18

> "Authentic **Tuscan furniture** and satellite TV in all the apartments." -- http://www.busines.il.nu/Italy; and

> "All apartments have terra cotta floors, wood-beamed ceilings, traditional **Tuscan furniture**, modern kitchens and bathrooms, and lots of large windows." -- http://valdi-chiana.it/expo/ilgreppo/index.-eng.html.

While, as mentioned previously, such evidence is at best equivocal as to whether the references to "Tuscan furniture" refer to furniture which is made in Tuscany or instead designate a style of furniture which originated in Tuscany, it is clear in either event that even if Tuscany is not famous or known for furniture and/or has not come to represent a style thereof, the production of furniture is nonetheless a significant industry in such region of Italy and has been for many years.

Clearly, furniture is a product which is made in Tuscany, as it is in numerous geographic locales throughout the world, and members of the general public interested in purchasing furniture which comes from Tuscany would, during the course of an Internet search, find advertisements of the kinds which have been made of record. The evidence is sufficient to establish a *prima facie* showing that the purchasing public would reasonably believe that furniture bearing the mark "TOSCANA" is manufactured or otherwise originates in Tuscany and applicant

has offered nothing to rebut the goods/place association which consumers would be likely to make.

In particular, Tuscany has been shown to be a sizeable region which produces a wide variety of products, including furniture. While Tuscany is apparently not famous or otherwise noted for its furniture, such is not a requirement in order for consumers to mistakenly believe that a goods/place association exists. See, e.g., In re Jack's Hi-Grade Foods, Inc., supra at 1030. According to the record, Tuscany is an important industrial center and, especially in the case of pieces of hand-crafted furniture (which are products encompassed by the goods identified in applicant's application), such items plainly would be considered by consumers to be a natural expansion of Tuscany's longstanding handicraft industries, particularly those in wood and metal. Applicant's mere argument that "[p]urchasers of fine furniture are sophisticated and very discriminating because of the nature of goods," which are often expensive and selected "with the personal assistance and advice of an experienced salesperson," does not negate the demonstrated fact that consumers would regard the term "TOSCANA" as geographical and would simply assume that the furniture they are interested in purchasing is made in or otherwise has its origin in the Tuscany region of Italy, when in fact such is not the case. See, e.g., In re Save Venice New York, Inc., supra at 5 ["from

the consumer's perspective, we ... find no reason to believe that the public strictly limits its association of a place to the geographic region's traditional products or services"; instead, "[b]ecause ... consumers may assume that geographic regions, like other commercial actors, are likely to expand from their traditional goods or services into related goods or services, we hold that the registrability of a geographic mark may be measured against the public's association of that region with both its traditional goods and any related goods or services that the public is likely to believe originate there"].

**Decision**: The refusal under Section 2(e)(3) is affirmed.