THIS DISPOSITION IS
CITABLE AS PRECEDENT
OF THE TTAB

8/20/02

Paper No. 11
GDH/gdh

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re Ruffin Gaming, LLC
_____

Serial No. 75/899,614
_____

Richard J. Musgrave of Husch & Eppenberger, LLC. for Ruffin Gaming, LLC.

Florentina Blandu, Trademark Examining Attorney, Law Office 112 (Janis O'Lear, Managing Attorney).
_____

Before Hohein, Bucher and Drost, Administrative Trademark Judges.

Opinion by Hohein, Administrative Trademark Judge:

Ruffin Gaming, LLC has filed an application to register the term "FISHERMAN'S WHARF" for "entertainment services, namely, live performances by a musical band, amusement arcades, casino services, theatrical performances, vaudevilles and comedy performances" in International Class 41 and "hotel

services, restaurant services, nightclub services, café services and providing convention facilities" in International Class 42.[1]

Registration has been finally refused under Section 2(e)(1) of the Trademark Act, 15 U.S.C. §1052(e)(1), on the basis that, when used in connection with applicant's services, the term "FISHERMAN'S WHARF" is merely descriptive of them.[2]

Applicant has appealed. Briefs have been filed, but an oral hearing was not requested. We affirm the refusal to register.

It is well settled that a term is considered to be merely descriptive of goods or services, within the meaning of Section 2(e)(1) of the Trademark Act, if it forthwith conveys information concerning any significant ingredient, quality, characteristic, feature, function, purpose or use of the goods or services. See, e.g., In re Gyulay, 820 F.2d 1216, 3 USPQ2d 1009 (Fed. Cir. 1987) and In re Abcor Development Corp., 588 F.2d 811, 200 USPQ 215, 217-18 (CCPA 1978). It is not necessary that a term describe all of the properties or functions of the

---

[1] Ser. No. 75/809,046, filed on January 20, 2000, based upon an allegation of a bona fide intention to use such term in commerce.

[2] Although, initially, the Examining Attorney also refused registration on the grounds that, when used in connection with applicant's services, the term "FISHERMAN'S WHARF" is primarily geographically descriptive thereof under Section 2(e)(2) of the Trademark Act, 15 U.S.C. §1052(e)(2), if applicant's services come from the Fisherman's Wharf area of San Francisco, and is primarily geographically deceptively misdescriptive thereof under Section 2(e)(3) of the

goods or services in order for it to be considered to be merely descriptive thereof; rather, it is sufficient if the term describes a significant attribute or idea about them. Moreover, whether a term is merely descriptive is determined not in the abstract but in relation to the goods or services for which registration is sought, the context in which it is being used on or in connection with those goods or services and the possible significance that the term would have to the average purchaser of the goods or services because of the manner of its use. See In re Bright-Crest, Ltd., 204 USPQ 591, 593 (TTAB 1979). Thus, "[w]hether consumers could guess what the product [or service] is from consideration of the mark alone is not the test." In re American Greetings Corp., 226 USPQ 365, 366 (TTAB 1985).

Applicant, while acknowledging that a purpose behind the statutory prohibition against registration of terms which, when used in connection with particular goods or services, are merely descriptive thereof "is to prevent others from monopolizing descriptive terms in relation to the [goods or] services," argues that "[t]here would be no breach of policy by allowing the Appellant to register FISHERMAN'S WHARF for a casino complex operating ... games of chance, restaurants, ...

---

Trademark Act, 15 U.S.C. §1052(e)(3), if the services do not come from such area, both refusals were subsequently withdrawn.

hotel services, entertainment services and the like."  In

particular, applicant contends that:

> No one will be put at a competitive
> disadvantage in the casino industry by not
> being able to use FISHERMAN'S WHARF to
> describe their casino complex ....  The
> Appellant will not be inhibiting competition
> ... if it received registration of the
> FISHERMAN'S WHARF mark.  It would be an
> anomaly for people in the industry to use
> FISHERMAN'S WHARF to describe the
> aforementioned services.  The reason and
> public policy behind the non-registrability
> of [merely] descriptive marks would not be
> breached by allowing the Appellant
> registration of its mark in this case.

Furthermore, as to the Examining Attorney's specific

contention that the term "FISHERMAN'S WHARF" is merely

descriptive of applicant's services because such services are

likely to depict or feature the well known, if not famous,

Fisherman's Wharf area of San Francisco, applicant asserts that

the Examining Attorney "committed error by reviewing Appellant's

service mark in relation to the theme rather than to the

services."[3]  According to applicant:

---

[3] Applicant, in its brief, additionally refers to a list of third-party registrations which it submitted with its request for reconsideration. Applicant maintains that the list demonstrates that "the United States Patent and Trademark Office [('PTO')] has allowed registrations to exist on the Principal Register for, *inter alia*, PARK AVENUE," as well as such other terms as "BOURBON STREET," "SOUTH BEACH," "SAHARA" and "RIVIERA."  In particular, applicant insists that "the Principal Register contains numerous registrations containing locations, places or things as part of the marks used in relation to, *inter alia*, casino services."  While recognizing that "each mark must be evaluated on its own merits," applicant urges that "it is entitled to consistency in ... practice and procedure" from the PTO and that "its mark is just as

> The services for which the Appellant has applied to register the mark relate to a casino complex ... operating games of chance, restaurants, ... hotel services, entertainment services and the like. The services rendered in no way relate to or are descriptive of the "Fisherman's Wharf" in San Francisco. The San Francisco Fisherman's Wharf is not a service and does not relate to the services in question, and it is not in any way described by the terms "Fisherman's Wharf." The San Francisco Fisherman's Wharf is a section of that city where fishing and sightseeing boats moor. This has no relationship whatsoever with the services for which the mark FISHERMAN'S

---

entitled to receive trademark protection as any of these other marks." Although the Examining Attorney has not addressed any of applicant's contentions in this regard, it is pointed out that, inasmuch as the Board does not take judicial notice of third-party registrations, the submission at this stage of a mere list thereof "is insufficient to make them of record." In re Duofold Inc., 184 USPQ 638, 640 (TTAB 1974). The proper procedure, instead, for making information concerning third-party registrations of record is to submit either copies of the actual registrations or the electronic equivalents thereof, i.e., printouts of the registrations which have been taken from the PTO's own computerized database. See, e.g., In re Consolidated Cigar Corp., 35 USPQ2d 1290, 1292 n. 3 (TTAB 1995); In re Smith & Mehaffey, 31 USPQ2d 1531, 1532 n. 3 (TTAB 1994); and In re Melville Corp., 18 USPQ2d 1386, 1388 n. 2 (TTAB 1991). In any event, even if such information were to be considered, given the indication by applicant that the terms listed, in each instance, form only "part of" rather than the actual marks which are the subjects of the third-party registrations, and inasmuch as there is no way of knowing on this record whether the registrations issued with or without either a disclaimer of the particular term under Section 6(a) of the Trademark Act, 15 U.S.C. §1056(a), or pursuant to a claim of acquired distinctiveness in accordance with Section 2(f) of such Act, 15 U.S.C. §1052(f), the information furnished by applicant is essentially of no probative value. Furthermore, as applicant has correctly acknowledged, each case must be determined on its own merits. See, e.g., In re Nett Designs Inc., 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001) ["Even if some prior registrations had some characteristics similar to [applicant's] application, the PTO's allowance of such prior registrations does not bind the Board or this court"]; In re Broyhill Furniture Industries Inc., 60 USPQ2d 1511, 1514 (TTAB 2001); and In re Pennzoil Products Co., 20 USQP2d 1753, 1758 (TTAB 1991).

> WHARF is sought to be registered by Appellant. Appellant's services relate to hotel, gaming, entertainment and restaurant services and in no way constitute a fishing or mooring area. Fisherman's Wharf does not in fact designate services but rather a thing; Appellant's services in no way depict the Fisherman's Wharf in San Francisco. As indicated above, the use of the terms FISHERMAN'S WHARF for a section of a casino, entertainment venue, restaurant or bank of hotel rooms is merely to evoke the theme of Appellant's facility. Although ... FISHERMAN'S WHARF is not a "coined" or fanciful mark, Appellant is still entitled to registration for its service mark used in conjunction with the services listed above. ... Fisherman's Wharf is no more inherently related to the services in question than the mark XYZ would be. FISHERMAN'S WHARF is not [merely] descriptive of a casino complex offering gambling, ... restaurants, ... hotel services, entertainment services and the like.

Finally, applicant urges that the term "FISHERMAN'S WHARF" is an arbitrary mark when used in connection with its services.[4] Applicant reiterates, in view thereof, that it "will not be inhibiting competition for the aforementioned services by receiving registration of the FISHERMAN'S WHARF mark." Applicant argues, by analogy, that "just because an APPLE® computer has an apple icon thereon or an apple theme does not

---

[4] At first blush, it would appear contradictory for applicant to argue that, while the term "FISHERMAN'S WHARF" is "an arbitrary mark" which "in no way relate[s]" to its services, such term, as noted previously, "is not a 'coined' or fanciful mark." It is assumed, however, that by the latter applicant acknowledges that the name "Fisherman's Wharf" is an actual location or section of San Francisco, instead of a contrived or fictitious place, but that the use of such name in connection with

make the APPLE® mark descriptive of computers" and, thus, "[t]he owner of the APPLE® mark is not inhibiting competition in the sale of computers."

The Examining Attorney, on the other hand, contends that the term "FISHERMAN'S WHARF" merely "describes a feature and significant characteristic of the applicant's services" because, when "consumers encounter the proposed mark ... in connection with the applicant's services, they will immediately know that the theme of the premises is that of San Francisco's famous landmark, the FISHERMAN'S WHARF." Applicant, the Examining Attorney points out, "has stated that the proposed mark will be used in connection with a section of its casino and that the use of the term 'FISHERMAN'S WHARF' is merely to evoke the theme of the applicant's facility."

In particular, we note that in reply to three inquires which, pursuant to Trademark Rule 2.61(b), were raised by the Examining Attorney in her initial Office Action, applicant responded as follows:

> a. What is the theme of the places where the services are rendered?
>
> The services will be rendered in the context of a hotel and casino facility located in Las Vegas, Nevada. The theme of such facility will be the City of San Francisco. This is similar to hotel-casinos

---

its services, admittedly so as "to evoke the theme of Appellant's facility," somehow is nonetheless "arbitrary."

in Las Vegas using the themes of the City of
New York (New York, New York), the City of
Paris (Paris) and similar city themes.
Accordingly, various areas within the casino
may be designated with the names of well
known San Francisco landmarks.

b.  Are the services in any way
depicting the "Fisherman's Wharf" in San
Francisco?

The services rendered herein in no way
relate to the "Fisherman's Wharf" in San
Francisco.  ....  ... Applicant's services
in no way depict Fisherman's Wharf in San
Francisco.  As indicated above, the use of
the term FISHERMAN'S WHARF for a section of
a casino, entertainment venue, restaurant or
bank of hotel rooms is merely to evoke the
theme of Applicant's facility.

c.  What is the meaning of the mark
when used in connection with the services?

The mark FISHERMAN'S WHARF has no
specific meaning in relation to the services
....  Rather, it is an arbitrary mark whose
intent, as is discussed above, is merely to
evoke the theme of the facility planned by
Applicant.

Significantly, applicant also admitted in such response that

"[i]t is a very common business practice to name casino hotels

and parts thereof after various geographical terms which relate

to the theme of the given hotel casino complex."  As examples

thereof, applicant noted that, besides the previously mentioned

properties named after the cities of New York and Paris, "there

are in existence in Las Vegas, Nevada casino hotel facilities

using [the] geographically descriptive words of:  ... Santa Fe;

8

Rio (a reference to Rio de Janeiro); Barbary Coast (an area in San Francisco); Sahara (a reference to the Sahara Desert)[;] and others."

The Examining Attorney, in support of her position, has made of record a number of excerpts from her search of the "NEXIS" electronic database showing that "Fisherman's Wharf" is a well known, if not famous, area or section of San Francisco. She also has made of record printouts from three website articles which indicate that applicant, as well as two other developers, intend to build San Francisco-themed hotel casino entertainment complexes which will include replicating various landmarks unique to or often associated with San Francisco, such as Coit Tower, Lombard Street, Fisherman's Wharf, Alcatraz, the Golden Gate Bridge and cable cars.  One such article, which appears at http://www.casinomagazine.com and is entitled "FREE SPEECH  I Lost My Shirt in San Francisco," reports in relevant part that:

> Developers have plans to build three more San Franciscos, and where else but in Las Vegas, a city where anything worth doing is worth overdoing, including another city.
> Naturally, Las Vegas' multiple San Francisco disorder has led to arguments and rumblings of lawsuits about which developer thought of copying San Francisco first.
> In 1997, Las Vegas developer Mark Advent, who conceived of the New York-New York hotel-casino, announced his intention to build a $500 million "San Francisco-themed" casino on the strip.

By 1999, Advent's budget had grown to $1 billion and the plan called for a replica of the Bay with little boats sailing to an Alcatraz replica in the middle, a miniature Golden Gate Bridge and seven specialty casinos reflecting themes of seven San Francisco neighborhoods.

....

Last October San Francisco developer Luke Brugnara said he'd like to build a miniature City by the Bay by the desert, too. ....

This week Kansas-based real estate man Phil Ruffin announced plans to build yet another way for rubes to leave their shirts in San Francisco. He wants to build a $700 million resort-casino called The City by the Bay featuring miniature versions of many of San Francisco's most famous tourist spots, including Napa Valley.

....

Let a hundred San Franciscos bloom in the desert, alongside other Las Vegas-class versions of world-class cities like New York, Paris and Venice. ....

But imitators shouldn't get huffy and claim to be the innovators who came up with the idea of a copy - unless their last name is Xerox.

Advent and Ruffin are acting like they invented the concept of a miniature San Francisco ....

"We have our own design," Ruffin was quoted as saying. "We didn't copy their stuff."

....

If there must be three different San Franciscos in Las Vegas, let them be three really different San Franciscos, like we have here. ....

Who wants to go to Vegas and see three fake Coit Towers, three fake North Beaches and three fake Chinatowns. ....

One San Francisco casino could represent the standard tourist San Francisco, with little bridges, cable cars and a tackier version of Fisherman's Wharf.

Another could represent the hip, high-tech San Francisco, with laptop slot machines in coffeehouses, restaurants with fusion buffets and blackjack dealers in black clothing and retro shoes.

Yet another could be the risqué San Francisco, with a miniature O'Farrell Theater, a small and safe Tenderloin and a cloned Castro.

This is the age of niche marketing, so why don't these hotshot developers think of things like this?

No, it's always the same old Alcatraz and Golden Gate Bridge. And then they say they came up with the idea.

Lately Las Vegas has become one-stop shopping for world travel, a city of city imitations. ....

Another article, retrieved from

[26/http://home.att.net](26/http://home.att.net), sets forth a history of the Frontier

hotel (also known as the New Frontier) in Las Vegas and states,

with respect to applicant's president, Phil Ruffin, and his

plans for such hotel and its site, that:

In October, 1997, Wichita businessman Phil Ruffin purchased the Frontier for $167 million .... ....
....
On January 5, 2000, it was announced that the second lady of the Strip was to close her doors forever. Ruffin announced that he is going to implode the Frontier and build a replica of San Francisco, California - a casino named City By The Bay which would've been completed in September, 2002, containing 2,500 rooms at a cost of $700 million. .... Plans for the new resort include replicas of Chinatown, the Coit Tower and Lombard Street. There will be a walk-through Chinese pagoda, on to the Golden Gate Bridge which will then go to Fisherman's Wharf with boats in the water.

There will also be the Alcatraz Restaurant and a Napa Valley winery.

....

Mark Advent of Advent Communications and Entertainment who created the concept for New York-New York took legal action against Ruffin. Advent stated that he has been working with Ruffin for the past two years to create a San Francisco-themed megaresort, and copyrighted detailed plans, designs, concepts and other proprietary information with Ruffin .... Ruffin dismissed Advent's complaint stating "city themes are in the public domain."

The third article, also retrieved from the website 26/http://home.att.net, details plans by applicant's president concerning the "City By The Bay" project:

Phil Ruffin is planning to build the City by the Bay Casino and Resort on the 25.5 acres where The New Frontier now sits.

The City By The Bay will feature the renowned Fisherman's Wharf where visitors will be able to step out of the desert and into the legendary Bay area in which a carnivalesque mood will set the scene. A myriad of indoor and open-air seafood eateries will be available to satisfy every level of appetite .... Visitors will enjoy the atmosphere, and the aromas, of this ... fun-filled scenic setting for dining and shopping complete with curio shops and street performers. This spectacular attraction will include a pod of sea lions, Monterrey [sic] boats and a wave making machine to supply the sounds of the bay.

Although Fisherman's Wharf will be the main attraction at The City By The Bay, it doesn't stop there. The project will pay tribute to many of the public domain icons of San Francisco including:

*Chinatown* - .... Visitors will be able to delve into a world of exotic shops and

12

markets, authentic restaurants and, at times, an indigenous festival.

*Lombard Street* - A replica of "the crookedest street in the world[,]" you will be able to stroll your way up to the Coit Tower while enjoying the profusely landscaped grounds.

*Coit Tower* - This fluted concrete shaft will rise approximately 300 feet from street level at the top of Lombard Street. ....

*Alcatraz* - The infamous "Rock" will be the setting for a unique dining experience. .... Patrons may find themselves dining in "Cell Block A" on tin plates.

*Napa Valley* - A fully operational winery featuring a selection of California's finest wines. Napa Valley will also offer gourmet dining and fine wines for tasting and purchase.

The hotel will offer 2,512 guest rooms .... Convention and meeting space will cover 100,000 square feet of meeting and pre-function rooms. The casino area will encompass 100,000 square feet .... The Golden Gate Bridge will serve as a stately backdrop as it transports you from the strip throughout the property.

The bay area known for it [sic] delectable dining and nightlife will be transformed to The City By the Bay with 10 specialty restaurants in addition to the 4 to 5 seafood options featured at Fisherman's Wharf. The tone of sweet seduction and romantic melodies will come alive with the musical style of Otis Redding and Al Green in the properties [sic] lounges and nightclub. The property will also house a 1,200 seat showroom featuring its own in-house production. Ruffin is looking at several propositions but has not committed to a specific production at this time. He is looking for the "perfect" high energy, musical and art form that will portray the infamous nightlife the bay area is known for.

The project includes a ... retail area plus the specialty shops located in the

13

> Fisherman's Wharf and Chinatown.  In
> addition, a short stroll over the Oakland
> Bridge and guests will find themselves in
> The Fashion Show Mall which houses
> approximately 145 outlets and focuses on
> high-end retail.

The Examining Attorney, based upon the evidence of record and the Board's decision in In re Busch Entertainment Corp., 60 USPQ2d 1130, 1133-34 (TTAB 2000), in which the term "EGYPT" was held merely descriptive of a significant feature, namely, "the Egyptian theme or motif," of the amusement park services involved therein, accordingly reasons that, as previously noted, the term "FISHERMAN'S WHARF" is merely descriptive of applicant's services because:

> In *In re Busch* the Board agreed ...
> that [the record established that] it is
> customary for ... amusement parks ... to
> feature diverse names of places and then
> have those premises feature the [named place
> as the] pertinent theme.  The Board noted
> that[,] therefore, the marks in question
> would serve as nothing more than information
> with respect to one of the salient features
> of the [services rendered under each] mark,
> namely, the theme.

> Similarly, in the present case, the
> mark in question does nothing more than to
> inform ... consumers about one of the
> features of the services, namely, that the
> theme in question is that of the famous San
> Francisco landmark, namely, the FISHERMAN'S
> WHARF.  Therefore, the mark is clearly
> merely descriptive of one of the features of
> the [services rendered under the] mark and
> the refusal ... is warranted and should be
> upheld by the Board.

14

As a general proposition, we note that a term which otherwise would be considered an arbitrary, fanciful or suggestive mark, when used in connection with goods or services to identify and distinguish the source thereof, does not lose such characterization or status, and become merely descriptive of the goods or services, simply because the term could literally designate a theme of the goods or services, e.g., the trade dress of a product or the décor of an entertainment facility, when so used.[5]  That is, just because such a term could thematically describe a trade dress or décor, that does not make the term merely descriptive if the trade dress or décor is arbitrary, fanciful or suggestive, but if the trade dress or décor is descriptive, then a term which describes such thematic manner of use is merely descriptive.  See, e.g., Stork Restaurant, Inc. v. Sahati, 166 F.2d 348, 76 USPQ 374, 379 (9th Cir. 1948) ["THE STORK CLUB" for café and nightclub services "might well be described as 'odd', 'fanciful', 'strange', and 'truly arbitrary'" but "[i]t is in no way descriptive of the

---

[5] We judicially notice, for instance, that in this regard The Random House Dictionary of the English Language (2d ed. 1987) at 1966 defines "theme" in pertinent part as "**2.** A unifying or dominant idea, motif, etc., as in a work of art."  It is settled that the Board may properly take judicial notice of dictionary definitions.  See, e.g., Hancock v. American Steel & Wire Co. of New Jersey, 203 F.2d 737, 97 USPQ 330, 332 (CCPA 1953); University of Notre Dame du Lac v. J. C. Gourmet Food Imports Co., Inc., 213 USPQ 594, 596 (TTAB 1982), aff'd, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983); and Marcal Paper Mills, Inc. v. American Can Co., 212 USPQ 852, 860 n. 7 (TTAB 1981).

15

appellant's night club, for in its primary significance it would denote a club for storks," "[n]or is it likely that the sophisticates who are its most publicized customers are particularly interested in the stork"]; Taj Mahal Enterprises Ltd. v. Trump, 745 F. Supp. 240, 16 USPQ2d 1577, 1582 (D.N.J. 1990) ["TAJ MAHAL is clearly suggestive in the food service, casino and guest accommodations markets because it takes some imagination to link those services with the name of a palatial crypt located in India"]; Trump v. Caesars World, Inc., 645 F. Supp. 1015, 230 USPQ 594, 599 and 595 (D.N.J. 1986), *aff'd in op. not for pub.*, 2 USPQ2d 1806 (3d Cir. 1987) ["CAESARS PALACE" and "PALACE" are "fanciful, nongeneric names when used in conjunction with casino hotels" which are "informed by a so-called 'Greco-Roman' theme"]; Caesars World, Inc. v. Caesar's Palace, Inc., 179 USPQ 14, 16 (D. Neb. 1973) ["CAESARS PALACE" is "arbitrary, unique and nondescriptive" when used in connection with hotel and convention center services]; and Real Property Management, Inc. v. Marina Bay Hotel, 221 USPQ 1187, 1190 (TTAB 1984) ["It seems obvious that 'MARINA,' whatever descriptive significance it may have in relation to other services or goods, would not per se operate to describe hotel and restaurant facilities, even those located on bodies of water"].

Each of the foregoing cases, of course, was determined on its own facts and, in particular, the significance which each of the subject marks had to the relevant public encountering the terms at issue in connection with the respective services. This appeal, however, is most analogous to the *Busch* case cited by the Examining Attorney and from which, for present purposes, the proposition may be extracted that, where the record reveals that it is the intent of an applicant and a practice or trend in the trade or industry to replicate or otherwise simulate the ambiance or experience of a place (in whole or meaningful part), then a term which names the place, when used as a theme of the goods or services, is generally considered to be merely descriptive of a significant feature or characteristic of the goods or services.[6] See In re Busch Entertainment Corp., supra [in view of evidence demonstrating a trend in theme park industry of recreating the culture or history of foreign lands and showing that "EGYPT" is the name of the ninth land in the applicant's African-themed amusement park, "EGYPT" found merely

---

[6] Unlike, for example, the two previously cited cases involving the "CAESARS PALACE" mark, it is important to remember that this appeal involves the name of an actual, existing place which is sought to be appropriated as a mark for services associated with a hotel casino entertainment complex. It should also be kept in mind that this case involves only the issue of mere descriptiveness, rather than genericness, and that it does not involve the question of possible acquired distinctiveness of the term "FISHERMAN'S WHARF" under Section 2(f) of the Trademark Act, 15 U.S.C. §1052(f), for any of applicant's services.

17

descriptive of amusement park services inasmuch as term indicates subject matter or country being imitated, at least in part, and would be so recognized by consumers; as such, term identifies only an Egyptian theme or motif rather than the source or origin of the services]. While presently still an intent-to-use application, applicant has admitted, and the evidence clearly supports, the fact that applicant's services will be rendered in the context of a San Francisco-themed resort and that such facility will include a distinct area designated as "FISHERMAN'S WHARF," which will be built and decorated to evoke the ambiance or experience of the Fisherman's Wharf area of the city. Moreover, while Fisherman's Wharf is obviously not a country like Egypt, the record plainly demonstrates that it is a well known--if not famous--place, with readily identifiable features or characteristics, within San Francisco. Fisherman's Wharf, furthermore, plainly is not a place devoid of commercial activity inasmuch as applicant has admitted, as noted previously, that "[t]he San Francisco Fisherman's Wharf is a section of that city where fishing and sightseeing boats moor" and the record additionally reflects that it is home to such businesses as hotels and restaurants.

We therefore agree with the Examining Attorney that, in this case, the record sufficiently establishes that customers for applicant's entertainment services, consisting of live

performances by a musical band, amusement arcades, casino services, theatrical performances, vaudevilles and comedy performances, and its various hotel services, restaurant services, nightclub services, café services and the providing of convention facilities would immediately understand, without speculation or conjecture, that the term "FISHERMAN'S WHARF" merely describes a significant characteristic or feature thereof, namely, the theme or décor used in the rendering of the services. Collectively, as applicant has admitted, such services are all part of applicant's planned hotel casino entertainment complex which, as two of the website articles plainly evidence, will replicate as a substantial portion of its San Francisco-themed facility the ambiance or experience of the Fisherman's Wharf area of that city. Fisherman's Wharf, as the "NEXIS" excerpts show, is a well known--if not famous--San Francisco landmark which, like such others as Coit Tower, Lombard Street, cable cars and the Golden Gate Bridge, serves as a readily, if not instantly, recognizable icon for the city itself. Consequently, while we appreciate applicant's contention that its services in no way relate to the mooring at Fisherman's Wharf in San Francisco of fishing and sightseeing boats, we find significant applicant's admission that the use of the term "FISHERMAN'S WHARF" in connection with its services "is merely to evoke the theme of the facility planned by Applicant."

19

Just as the term "EGYPT" is evocative of the theme or motif of the Egyptian section of the African-themed amusement park services in *Busch*, so too will the term "FISHERMAN"S WHARF" be evocative of a section of San Francisco which serves as a theme or motif for the services applicant intends to render.

Moreover, as similarly was the case in *Busch* with respect to third-party uses for amusement park services of the names of other foreign lands, the record herein not only contains evidence that applicant intends to imitate the Fisherman's Wharf area in connection with the services to be offered at its San Francisco-themed hotel casino entertainment facility, but that city imitations are commonplace in the field for services of the kinds applicant plans to provide. Applicant admits, as indicated earlier, that its services will be rendered in the context of a hotel casino entertainment complex to be located in Las Vegas, Nevada, with the theme of such facility being the City of San Francisco. Applicant also significantly concedes that, as previously noted, "[i]t is a very common business practice to name casino hotels and parts thereof after various geographical terms which relate to the theme of the given hotel casino complex," listing among the examples thereof, in Las Vegas alone, the "geographically descriptive words": New York, New York; Paris; Santa Fe; and Rio. Clearly, on this record, there is no doubt that the theme or décor utilized in

20

rendering services of the kinds typically provided by a hotel casino entertainment complex, such as those applicant intends to offer under the term "FISHERMAN'S WHARF," is a significant characteristic or feature thereof in that it accounts in large measure for the appeal of the facility's services to the consuming public.

Accordingly, far from its being, as applicant asserts, "an anomaly for people in the industry to use FISHERMAN'S WHARF to describe the aforementioned services," we concur with the Examining Attorney that, as argued in her brief, "[c]ompetitors may very well want to use the FISHERMAN'S WHARF theme in connection with their services and they will be disadvantaged if the applicant is given exclusive right of ownership in the mark in question." Indeed, the record shows that two other competitors of applicant have contemplated building hotel casino entertainment facilities which will feature a San Francisco theme. If they or any other competitor should choose to include, as part of such a facility, a replica of Fisherman's Wharf, they plainly should be entitled to refer to or otherwise describe that section by the term "FISHERMAN'S WHARF," since that term--being the proper noun or name by which that renowned geographical area and landmark of San Francisco is known--is obviously the most evocative or immediately informative designation therefor. As the Examining Attorney, for instance,

21

further notes in her brief, use of "the term FISHERMAN'S WHARF for casinos decorated to look like San Francisco's FISHERMAN'S WHARF landmark, clearly does just that."  See In re Gyulay, supra at 1010 ["APPLE PIE" merely describes scent of potpourri which simulates aroma of apple pie].

Thus, just as the designation "EGYPT" merely describes the theme or motif of the services offered in the section of an African-themed amusement park devoted in significant part to ancient Egyptian civilization, customers and prospective consumers for applicant's various San Francisco-themed services similarly would understand and expect, upon encountering the term "FISHERMAN'S WHARF" used in connection therewith, that such term merely describes the décor or theme, in the sense of the ambiance or experience of the city area or landmark being simulated, rather than the source or origin of the services. Applicant concedes, in fact, that "the use of the term "FISHERMAN'S WHARF for a section of a casino, entertainment venue, restaurant or bank of hotel rooms is merely to evoke the theme of Applicant's facility."  Plainly, when viewed in the context of the services which applicant's hotel casino entertainment facility will provide, there is nothing about the term "FISHERMAN'S WHARF" which is ambiguous, incongruous or susceptible, perhaps, to any plausible meaning other than immediately conveying information as to the theme of such

22

services.  Nothing requires the exercise of imagination, cogitation or mental processing or the gathering of further information in order for customers and potential consumers of applicant's services to readily perceive that, as is a common business practice in the industry, the term "FISHERMAN'S WHARF" names the particular theme of such services.

It is well established that, with respect to issues of descriptiveness, the placement or categorization of a term along the continuum of distinctiveness that ranges from arbitrary or fanciful to suggestive to merely descriptive to generic is a question of fact.  See, e.g., In re Merrill Lynch, Pierce, Fenner & Smith, Inc., 828 F.2d 1567, 4 USPQ2d 1141, 1143 (Fed. Cir. 1987).  It is clear on this record that, unlike applicant's example of the mark "APPLE" for computers which bear an apple icon (as opposed to those in the shape of an apple), the term "FISHERMAN'S WHARF" can scarcely be considered arbitrary or fanciful, or even just suggestive, when used in connection with the services which applicant's hotel casino entertainment complex will render to consumers in a facility designed to replicate or imitate the renowned Fisherman's Wharf section of San Francisco.[7]  Rather, as applicant's president reportedly

---

[7] We are mindful, in so noting, that care is obviously required in extending the spectrum of categories of words as marks into the realm of shapes and images which words can describe or suggest.  As Professor McCarthy has cautioned (*emphasis added*):

stated, "city themes are in the public domain," and the purchasing public, which continues to watch the proliferation of such themes for hotel casino entertainment complexes, would readily and unequivocally perceive the term "FISHERMAN'S WHARF" as designating the theme or motif of applicant's services instead of their source or origin.

Accordingly, because the term "FISHERMAN'S WHARF" conveys forthwith significant information concerning a feature or characteristic of applicant's "entertainment services, namely, live performances by a musical band, amusement arcades, casino services, theatrical performances, vaudevilles and comedy performances and its various hotel services, restaurant services, nightclub services, café services and providing of convention facilities," it is merely descriptive thereof within

---

A few courts have tried to apply to trade dress the traditional spectrum of marks categories which were created for word marks .... That is, these courts have tried to apply such categories as "arbitrary," "suggestive," and "descriptive" to shapes and images. Only in some cases does such a classification make sense. For example, a tomato juice container in the shape of a tomato might be classified as "descriptive" of the goods. While a commonly used, standard sized can used as a tomato juice container is not "descriptive" of the goods, it is hardly inherently distinctive. *The word spectrum of marks simply does not translate into the world of shapes and images.*

1 J. McCarthy, McCarthy on Trademarks & Unfair Competition §8:13 (4th ed. 2002).

the meaning of the statute.[8]  See In re Busch Entertainment

Corp., supra at 1134.

---

[8] The dissent, perhaps by its failure to come to grips with all of the facts of record, finds that "[t]he difference between the facts of this case and Busch Entertainment could hardly be more striking." While the dissent is correct that, as to the term "FISHERMAN'S WHARF," "[t]here is no evidence that there are *numerous* hotels and casinos using the same geographic term" (*emphasis added*), we note that in *Busch*, supra at 1131, there were but two instances of third-party use of Egyptian themes, namely, "publicity about a Redlands, California, Egyptian theme park opening in 1996 as well as Circus Circus's Egyptian-pyramid theme park."  In any event, while the presence or absence of third-party use of a term in a descriptive manner has long been a factor in determining the issue of mere descriptiveness, it is settled that the fact that an applicant is or intends to be the first to use a term in connection with its goods or services does not justify registration where, as here, the term is shown to be merely descriptive thereof.  See, e.g., In re Quik-Print Copy Shop, Inc., 616 F.2d 523, 205 USPQ 505, 507 n. 8 (CCPA 1980); and In re National Shooting Sports Foundation, Inc., 219 USPQ 1018, 1020 (TTAB 1983).  As to the dissent's assertion that "[t]here also does not appear to be any need for other hotels or casinos to use the same geographic term, as there would be for theme parks to use the same terms for their themes," it would seem to bear repeating again that, not only does the record reveal that two competitors of applicant have announced their intentions to build San Francisco-themed hotel casino entertainment complexes which will replicate or simulate various San Francisco landmarks, including Fisherman's Wharf, but applicant has admitted that "[i]t is a very common business practice to name casino hotels and parts thereof after various geographical terms which relate to the theme of the given hotel casino complex."  Furthermore, nothing in the record demonstrates that such terms do indeed function as service marks, as the dissent assumes, or that they are registrable without resort to a showing of acquired distinctiveness in accordance with Section 2(f) of the statute.

The dissent recognizes that "Fisherman's Wharf would simply be one element of the San Francisco theme" of applicant's services, yet insists that "[i]t obviously takes some imagination for a purchaser to come to the understanding that terms that may be associated with San Francisco, such as Fisherman's Wharf, Moscone Center, Haight-Ashbury, Lombard Street, Coit Tower, or cable cars, would be terms used to describe San Francisco-themed services."  How a term which is the name of a widely known San Francisco landmark does not immediately describe a significant element of a San Francisco theme for applicant's services is not satisfactorily explained and is troubling given applicant's admission that its intended use of "FISHERMAN'S WHARF" "is merely to evoke the theme of Applicant's facility."

**Decision**: The refusal under Section 2(e)(1) is affirmed.

Drost, Administrative Trademark Judge, dissenting:

The majority has offered the following test to find that the mark in this case is merely descriptive:

---

As is plain from our narrow extension of the holding in *Busch*, it is only in the limited instance where the record demonstrates that it is the intent of an applicant and a practice or trend in the trade or industry to replicate or otherwise simulate the ambiance or experience of a place (in whole or meaningful part) that a term which names a place, when used as a theme of the goods or services, would generally be considered to be merely descriptive of a significant feature or characteristic of the goods or services. Most commonly, although not without exception, the term at issue would be a proper noun or name (e.g., "Egypt," "Fisherman's Wharf," "Coit Tower," "Lombard Street") rather than a common noun (e.g., "ancient country," "boating dock," "observation tower," "crookedest street"). Although the dissent views this case as "an unnecessary extension of our descriptiveness case law or a new type of geographic refusal not provided for in the Lanham Act," the test announced herein, when properly applied, does not characterize or place at risk a geographical term as merely descriptive simply because the term could literally designate a theme of the goods or services, e.g., the trade dress of a product or the décor of an entertainment facility, when so used. Clearly, and unlike the Egyptian motif involved in *Busch*, a hotel does not sufficiently simulate or replicate the ambiance or experience of Fisherman's Wharf if its décor, as the dissent suggests, just "included pictures of San Francisco on the wall[s], table-sized replicas of San Francisco landmarks, and rooms named after San Francisco landmarks."

Finally, the record confirms that the theme or motif of a hotel casino entertainment complex is a significant feature of the services provided by such a facility. Las Vegas would not continue to witness the building of new gambling resorts bearing city names and other motifs if the themes of such complexes were not a major customer attraction. Plainly, with the ready availability of gaming and star-studded entertainment, it is the theme of a hotel casino entertainment complex, given the faithfulness and magnitude with which it is often carried out, that differentiates the accommodations and other amenities surrounding the gaming experience and which constitutes a significant factor in a customer's selection of such a facility.

(1) Where the record reveals that it is the intent of an applicant and a practice or trend in the trade or industry to replicate or otherwise simulate the ambiance or experience of a place (in whole or meaningful part);

(2) then a term that names the place;

(3) when used as a theme of the goods or services, is generally considered to be merely descriptive.

Slip op. at 14-15.

The mark FISHERMAN'S WHARF has been refused registration for hotel, restaurant, casino and other services on the ground that it is merely descriptive (15 U.S.C. § 1052(e)(1)), not because it is primarily geographically descriptive or primarily geographically deceptively misdescriptive (15 U.S.C. § 1052(e)(2) and (3)).

I respectfully dissent.

The majority relies upon In re Bush Entertainment Corp., 60 USPQ2d 1130 (TTAB 2000) for its holding here. That case stands for the unremarkable proposition that when competitors are using a variety of names to refer to the various themes in their theme parks, then a term that describes the theme of a particular area of a park is merely descriptive. In effect, all theme park operators should be able to call an area of a theme park devoted to Egypt by that name. "We agree with the Examining Attorney that this record sufficiently

27

demonstrates that the public understands the name 'EGYPT' as used in association with applicant's amusement park services to indicate the subject matter or country being represented or simulated." Busch Entertainment, 60 USPQ2d at 1133-34. In the same way that a section of a museum devoted to Egyptian culture or an area of a bookstore featuring books on Egypt would be described by the term "Egypt," the amusement park in Busch Entertainment would similarly be merely descriptive of its content. Similarly, a section of a bookstore, museum, or theme park devoted to the history of modern transportation and named "Cars" would likewise be merely descriptive. Id. at 1134 ("These country names should be just as unregistrable as, say, such words as 'Automobiles,' 'Trains,' 'Airplanes' and 'Ships' designating various areas in a theme park devoted to means of transportation").

However, to be merely descriptive, the record should demonstrate that the industry uses these words to describe their services rather than to distinguish their services from those of others. The difference between the facts of this case and Busch Entertainment could hardly be more striking. First, the record in that case noted that a theme park was "an amusement park in which landscaping, buildings, and attractions are based on one or more specific themes, as jungles, wildlife, fairy tales, or the Old West." Busch Entertainment, 60 USPQ2d at 1131. Second,

28

the examining attorney also submitted evidence that "other amusement parks offer visitors a 'sampling of foreign lands.'" Id.

In sharp contrast to that record, the majority here relies on that fact that there are other hotels that use geographic terms as service marks for their hotel services: NEW YORK, NEW YORK; PARIS; RIO; and SANTA FE. There is no evidence that there are numerous hotels and casinos using the same geographic term. There also does not appear to be any need for other hotels or casinos to use the same geographic term, as there would be for theme parks to use the same terms for their themes.[1]

I find it curious that the majority relies on what appears to be trademark usage of geographic terms to support its argument that applicant's use of another geographic term is merely descriptive. There is no evidence that suggests that the

---

[1] The registration of the mark FISHERMAN'S WHARF for applicant's services would not prevent anyone from using a San Francisco theme for its hotel, restaurant, or casino services. Furthermore, the fact that there is apparently a copyright dispute regarding the plans for Ruffin's San Francisco theme hotel (Free Speech, "I Lost My Shirt in San Francisco," p. 15) or that another party announced (October 2000) that he "would like to build a miniature City by the Bay" (id. at 1) apparently after the filing date of this application (January 20, 2000) hardly demonstrates that applicant's mark is merely descriptive. Traditionally, trademark law has resolved questions of multiple uses of a mark by determining the priority of use and whether there is a likelihood of confusion, not by classifying the mark as merely descriptive. Other than this, the other evidence in the record primarily describes the trade dress that will appear in the San Francisco themed hotel-casino.

names NEW YORK, NEW YORK; RIO; SANTA FE; and PARIS are not being used to distinguish the source of one hotel or casino from those of another, i.e., as a trademark. In <u>Busch Entertainment</u>, the exact opposite was shown. The industry as a whole apparently needed and used these terms descriptively to describe the themed areas of their parks. In other words, the terms in that case were used to distinguish one part of a park from other parts of the park but not to distinguish the source of the services.

Second, another significant difference between this case and <u>Busch Entertainment</u> is that the term "Fisherman's Wharf" is not the equivalent of the term "Egypt." The evidence in this case indicates that applicant intends to use its mark on a San Francisco-themed casino and hotel complex, not a Fisherman's Wharf-themed casino. <u>See</u> *Free Speech; I Lost My Shirt in San Francisco*, p.15 ("Advent stated that he has been working with Ruffin for the past two years to create a San Francisco-themed megaresort"). Fisherman's Wharf would simply be one element of the San Francisco theme. Assuming that San Francisco is merely descriptive for the theme of applicant's hotel and other services, applicant's FISHERMAN'S WHARF mark would be one step removed from that term in the same way that the term "Nile" may not necessarily be descriptive of a section of a bookstore devoted to books on Egypt. It obviously takes some imagination for a purchaser to come to the understanding

30

that terms that may be associated with San Francisco, such as Fisherman's Wharf, Moscone Center, Haight-Asbury, Lombard Street, Coit Tower, or cable cars, would be terms used to describe San Francisco-themed services. While the majority views these terms as "readily, if not instantly recognizable icon[s] for the city itself," this does not necessarily translate into the terms being descriptive. The fact that the public may make a word association between Fisherman's Wharf and San Francisco does not make it the equivalent of San Francisco.

Third, the test enunciated by the majority is extremely limited. While the majority has not defined what it means by "to replicate or otherwise simulate the ambiance or experience of a place (in whole or meaningful part)," it apparently is a fairly rigorous test. It does not apply to what would appear to be a modest San Francisco-themed hotel that included pictures of San Francisco on the wall, table-sized replicas of San Francisco landmarks, and rooms named after San Francisco landmarks. The majority notes that "it can scarcely be argued that" a hotel whose décor consists of "pictures of San Francisco on the walls, table-size models of the Golden Gate Bridge and other San Francisco landmarks in the lobby, and San Francisco names for the meeting rooms" replicates a "Fisherman's

Wharf[2] ambiance." A theme is described as "an idea, point of view, or perception embodied or expanded upon in a work of art." *Webster's II New Riverside University Dictionary* (1984). The majority would apparently not define a theme as broadly as this definition. However, what it takes to replicate or otherwise simulate the ambiance or experience of a place beyond a near exact copy of a city scene is not clear.

Fourth, the majority's test for descriptiveness is so limited that it would apply primarily to Las Vegas-type hotels and casinos. What is not encompassed by the majority's rule is noteworthy.

The mark FISHERMAN'S WHARF for a hotel without any theme would not be subject to this refusal.

The mark FISHERMAN'S WHARF for a hotel with what many would consider a San Francisco theme (pictures, models, names, etc.) would not be subject to this refusal.

Even applicant's proposed hotel theme would not be subject to this refusal if other hotels and casinos were not replicating the experiences or ambiances of places.

The refusal also apparently would not apply if applicant had chosen a non-place theme such as airplanes or

---

[2] I assume that Fisherman's Wharf is being used interchangeably with San Francisco.

pirates for its hotel and copied the ambiance or experience of a pirate ship or a plane.[3]

Apparently, even if applicant had chosen the ambiance or experience of an uninhabited place, the refusal does not seem to apply. The majority noted that Fisherman's Wharf "is not a place devoid of commercial activity," in affirming the refusal in this case.[4]

In addition, this type of refusal applies almost exclusively to service marks. While the majority refers to "goods or services," it is difficult to see how a trademark for goods could ordinarily replicate the ambiance or experience of an area.[5]

---

[3] Although if applicant had chosen a cable car theme, apparently it would have been refused under the majority's analysis because "cable cars" could be considered "an icon for the city itself."

[4] See In re Nantucket, Inc., 677 F.2d 95, 213 USPQ 889, 897 (CCPA 1982) (Nies, concurring) ("A geographic name is not unprotectible or unregistrable because it can be labeled a geographic name, but because it tells the public something about the product or the producer about which his competitor also has a right to inform the public. Thus, the names of places devoid of commercial activity are arbitrary usage. In this category are names of places such as ANTARCTICA, MOUNT EVEREST, or GALAPAGOS, at least when used for ordinary commercial products, such as beer and shoes").

[5] I also would not find that applicant's amusement arcades are the equivalent of the Busch Entertainment amusement park services. We are bound to consider the services as they are identified in the application. While there are some similarities between an amusement arcade and amusement park services, the record does not contain any evidence that these services are the same or that the arcade industry has sections of arcades built around themes, including themes of various countries.

I agree with the majority's conclusion that its holding is a narrow extension of Busch Entertainment. It is apparently limited to service marks containing a name of a place that is not devoid of commercial activity. The services must also be provided in an establishment that nearly exactly replicates the ambiance or experience of a place. A mark meeting these requirements may then be found to be merely descriptive if its competitors are also replicating or simulating places. Applied in this restricted manner, this "Las Vegas" rule is an unnecessary extension of our descriptiveness case law or a new type of geographic refusal not provided for in the Lanham Act. It treats marks for the same services differently based on the specific ambiance or experience the trademark owner chooses to replicate. It distinguishes between unregistrable and registrable subject matter by the faithfulness and magnitude of the trademark owner's desire to establish an ambiance or experience of a place. What the public might see as a theme of a place would not meet the test because it is not enough of a replication or simulation in whole or in meaningful part of a place. Since I believe that this narrow extension of Busch Entertainment will lead to inconsistent results and confusion, it would be better to deal with this case under our established case law.

We have long held that any doubts in descriptiveness cases should be resolved in favor of the applicant.  <u>In re Morton-Norwich Products, Inc.</u>, 209 USPQ 791, 791 (TTAB 1981) (The Board's practice is "to resolve doubts in applicant's favor and publish the mark for opposition").  I believe that, at the very least, there are doubts about whether applicant's mark is descriptive, which should be resolved in applicant's favor.